**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| | : | |
| v. | : | NO. 07-205-02 |
| | : | |
| HOWARD WILLIS | : | |

**M E M O R A N D U M**

**STENGEL, J.**                                                                                           November   20 , 2007

Howard Willis was indicted by the grand jury for conspiracy to distribute a controlled substance, distribution of a controlled substance, possession with intent to distribute a controlled substance, and possession of a firearm in furtherance of a drug trafficking crime.  Willis filed a motion to suppress physical evidence.  For the following reasons, I will deny the motion in its entirety.

**I. BACKGROUND**

At a hearing on the motion, Special Agent Thomas Pietrowich testified that Willis' co-defendant Edwin Scott had been under the surveillance of Pennsylvania's Bureau of Narcotics Investigation for quite some time.  A confidential informant notified the agents that Scott was involved in the sale of cocaine and cocaine base in the Philadelphia area.  During the spring of 2006, agents kept Scott under surveillance at his home at 953 Brill Street in Philadelphia, at the Burger King where Scott was the manager, and while he was in his vehicle.  In May 2006, under the direction of the undercover agent, the confidential informant arranged for the purchase of crack cocaine from Scott.  After the purchase, a

field test confirmed that the substance was positive for the presence of cocaine.

On June 15, 2006, the confidential informant placed another recorded call to Scott and arranged for the purchase of one-half ounce of cocaine base. Again, following the purchase, a field test confirmed that the substance tested positive for the presence of cocaine. On June 20, 2006, the confidential informant arranged for the purchase of another ½ ounce of cocaine base. An hour later, the confidential informant called Scott to ask if the undercover agent could purchase the cocaine base directly from Scott. Scott agreed. After the delivery, the substance tested positive for the presence of cocaine.

On July 17, 2006, the undercover agent contacted Scott directly to arrange for the purchase of four and a half ounces of cocaine base. Scott responded that Scott's supplier of cocaine base would need from a couple more hours to a couple more days to produce that amount. On the following day, Scott again said that he was still waiting on his supplier. On July 27, 2006, the agent placed another recorded telephone call to Scott who quoted a price of $3,250 for the requested amount of cocaine base. Scott called the undercover agent at 2:45 p.m., to say that he would be ready with the package in fifteen minutes. At 3:00 p.m., the agents saw a silver pickup truck stop in front of Scott's residence. Scott exited the residence, and entered the passenger side of the truck. He then exited the car with an "unknown item" in his hand which he placed in his own vehicle. A Philadelphia police officer, who assisted in the investigation, noted the number of the truck's license plate, and found that it was registered to Willis at 6425

Hasbrook Avenue, Philadelphia, Pennsylvania. A few minutes later, Scott traveled to a Home Depot and parked next to the undercover agent's vehicle. The agent entered Scott's vehicle and several minutes later exited with a brown bag in his hand. A field test confirmed that the substance in the bag was positive for the presence of cocaine. The approximate weight of the cocaine was 130 grams.

On July 31, 2006, the undercover agent called Scott to arrange for the future purchase of one-half pound of cocaine base. On August 3, 2006, the agent negotiated with Scott the purchase of one-quarter pound of cocaine base for later that afternoon. At 4:20 p.m., the police saw Willis pulling up to Scott's residence driving a Ford Taurus. Scott left his own vehicle and went over to the driver's side window of the Taurus. Although no actual exchange was witnessed, the agents believed that Willis supplied Scott with four and a half ounces of cocaine base to be supplied to the undercover agent. Very soon after this "meeting," Scott delivered drugs to the undercover agent near the Home Depot. The agent gave Scott $3,250 in marked bills. A field test showed that the substance was positive for the presence of cocaine. The drugs weighed approximately 128 grams.

On August 24, 2006, the undercover agent made arrangements to purchase one-quarter pound of cocaine base from Scott. Later that day, before the scheduled purchase, Willis was seen leaving his residence, going to a restaurant, then returning home. After a couple more errands, Willis sat outside his parents' home in his car with another male

until 5:00 p.m., when they drove to a garage on North Clarissa Street. A man came out of the garage and spoke with Willis at the driver's side window. The man returned to the garage and came back out with a duffle bag which was placed into the trunk by Willis' companion. Willis and his companion returned to Willis' home and placed the duffle bag inside the house. About an hour later, Willis left and drove towards Scott's house in the Ford Taurus.

The agents stopped Willis' car in the 900 block of Brill Street, the block where Scott resides, and ordered Willis out of the vehicle. The agents searched the car and Willis' person, and seized 128 grams of cocaine base from Willis' pants pocket, $719.00 in cash, and a cellphone. He was arrested, given his Miranda warnings, and made no statements to the police. The agents then obtained and executed a search warrant for Willis' Hasbrook Avenue residence. There, they found and seized 57 grams of cocaine base, 7 grams of "marijuana weed and seed," a baggie of 2 grams of cocaine, and a baggie of a suspected cutting agent; a 9mm pistol, 40 caliber handgun, a 22 caliber shotgun, and a 12 gauge shotgun; $2,000 in one place and $4,842 in another; 600 rounds of ammunition; jewelry; coins; a scale; and other personal effects.

Another search was being executed simultaneously at Scott's house where agents recovered drug packaging materials, $619.00, a PECO bill in Scott's name, and a set of keys for his car. Agents also recovered a pouch containing a bag with 7 grams of cocaine. Scott was arrested, given Miranda warnings, and made a written statement in

which he admitted that he sold drugs, that Willis was his supplier for crack cocaine, and that he has known Willis to be a large quantity drug dealer since 1989.  The arrangement that Scott had with Willis was that Willis would give Scott the drugs, and when Scott was paid for a sale, he would in turn pay Willis.  Willis charged $3,000 for a quarter-pound of crack cocaine and Scott made "like $150.00."

## II.    DISCUSSION

### A.    The Terry Stop, Search, and Arrest

Willis argues that all physical evidence seized from his person and automobile should be suppressed because there were no facts from which it could be reasonably concluded that probable cause existed to stop, arrest, and search him on August 24, 2006.

In Terry v. Ohio, 392 U.S. 1 (1968), the Supreme Court created a narrowly drawn exception to the rule that warrantless searches are presumptively unreasonable by allowing a police officer to conduct a brief investigatory search without a warrant.  A police officer may conduct such a stop only if the officer can point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.  Johnson v. Campbell, 332 F.3d 199, 205 (3d Cir. 2003).  The Fourth Amendment allows police to "conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot."  Illinois v. Wardlow, 528 U.S. 119, 123 (2000).  Reasonable suspicion is defined as a particularized and objective basis for suspecting the particular person stopped of criminal

activity based upon the totality of the circumstances.  United States v. Nelson, 284 F.3d 472, 478 (3d Cir. 2002) (quoting United States v. Cortez, 449 U.S. 411, 417-18 (1981)).  Accordingly, even factors independently susceptible to innocent explanation can collectively amount to reasonable suspicion.  United States v. Brown, 448 F.3d 239, 252 (3d Cir. 2006).  A reasonable suspicion of criminal activity may be formed by observing exclusively legal activity.  United States v. Ubiles, 224 F.3d 213, 217 (3d Cir. 2000).  Moreover, police officers may rely on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person.  United States v. Arvizu, 534 U.S. 266, 274 (2000); see also United States v. Myers, 308 F.3d 251, 255 (3d Cir. 2002) (although probable cause must ultimately be decided by the courts, not the police, courts must take care to remember that police officers may well draw inferences and make deductions).

     Here, the evidence shows that Scott sold a quarter-pound of crack cocaine to an undercover officer on two occasions.  Willis had come to Scott's house before both scheduled deliveries of drugs.  On one occasion, the agents witnessed Scott entering the passenger side of Willis' vehicle, then leaving the vehicle with an "unknown item" in his hand which Scott placed in his own vehicle.  Just before the third purchase, the agents witnessed Willis drive to a garage, speak with a man who went back inside the garage and return with a duffle bag which was placed into the trunk of Willis' vehicle.  About an hour after he returned home, Willis left and again drove towards Scott's residence.  While

these events independently could possibly be explained, experienced narcotics agents who observed them could reasonably infer that Willis and Scott were operating together and that Willis was supplying the controlled substance to Scott for Scott's sales to the undercover officer. This suspicion was based on the officers' extensive experience, knowledge of the area and of the heightened drug activity present, and direct observation of the suspects acting in a manner consistent with drug traffickers. When the experience of these officers is added to the overall scope of this set of facts, the totality of the circumstances warranted reasonable suspicion that Willis was engaging in criminal activity. See Cortez, 449 U.S. at 417-18. Thus, there can be no question that the surveillance team had proper authority to call for Willis' vehicle to be stopped.

     The Supreme Court also recognized in Terry that an officer making a reasonable investigatory stop should have the opportunity to protect himself from attack by a suspect. Adams v. Williams, 407 U.S. 143, 146 (1972). Thus, during a Terry stop, officers may take additional steps that are reasonably necessary to protect their personal safety and to maintain the *status quo* during the course of the stop. United States v. Hensley, 469 U.S. 221, 235 (1985). Generally, a protective search consists of a pat-down of the exterior clothing of a detained individual. Terry, 392 U.S. at 21; Sibron v. New York, 392 U.S. 40, 65 (1968) (noting that protective searches will typically be confined to a limited patting of the outer clothing of the suspect for concealed objects which might be used as instruments of assault). Here, the authorized pat-down of Willis' person revealed 128

grams of cocaine base.

Willis argues that his subsequent arrest was illegal because the officers had no warrant and no probable cause to arrest him.  He insists that he did not threaten the safety of the law enforcement officers prior to this unlawful arrest, that he had no weapon, and that he did not present a danger to the safety of law enforcement officers.

Warrantless arrests are reasonable under the Fourth Amendment when the arresting officer has probable cause to believe that a criminal offense has been committed.  Devenpeck v. Alford, 543 U.S. 146, 152 (2004).  Probable cause is defined by the Supreme Court as facts and circumstances sufficient to lead a prudent man to believe that the suspect had committed or was committing an offense.  Beck v. Ohio, 379 U.S. 89, 91 (1964)).  Courts in the Third Circuit apply a "common sense approach," based on the totality of the circumstances, to determine whether law enforcement officials had probable cause to arrest.  Paff v. Kaltenbach, 204 F.3d 425, 436 (3d Cir. 2000).

ATF Special Agent Thomas Pietrowicz testified at the suppression hearing.  I found him to be very credible as he related how his team of law enforcement agents watched Willis and what conclusions they drew from their observations.  Certainly, these experienced officers had probable cause to believe that Willis was engaging in illegal activity.  They based the decision to arrest Willis after seeing him with his co-defendant on two occasions just before the co-defendant delivered drugs to the undercover agent.

On one occasion, the agents saw the co-defendant exit Willis' vehicle with an "unknown item" which the co-defendant placed in his own vehicle.  On the date of the arrest, after the co-defendant made arrangements for a third sale to the undercover agent, Willis drove to a garage where a duffle bag was placed into the trunk of his vehicle.  Later, as he pulled onto the street where his co-defendant resided, the officers stopped the vehicle.  It was reasonable for the police to believe that Willis and Scott were operating together and that Willis was Scott's supplier.  Based on the totality of these circumstances and the experience of these law enforcement officials, I find that probable cause existed to arrest Willis that evening without a warrant.  Paff v. Kaltenbach, 204 F.3d at 436.

### B.    The Search of 6425 Hasbrook Avenue and the Ford Taurus

Willis argues that evidence seized from his residence at 6425 Hasbrook Avenue and his Ford Taurus must be suppressed as the poisonous fruit of an illegal search.  First, Willis claims that absent his illegal arrest, there was no probable cause to believe that drugs would be found at his residence or in his vehicle.  This argument is meritless given my finding that Willis' arrest was a lawful one.  The agents had probable cause to support an application for a search warrant of Willis' residence and vehicle.[1]

---

[1] Even if a search warrant had not been issued for the vehicle, its search would have still been justified under the long-standing automobile exception to the Fourth Amendment warrant requirement, which allows for the warrantless search of any area of a vehicle that may harbor contraband or other evidence of illegal activity.  United States v. Salmon, 944 F.2d 1106, 1123 (3d Cir. 1991) (citing United States v. Ross, 546 U.S. 798, 825 (1982)); see also United States v. Burton, 288 F.3d 91, 100-101 (3d Cir. 2002) (automobile exception allows police to search an automobile without a warrant if they believe that the automobile contains evidence of a crime).

Second, Willis claims that the search of his residence was illegal because it was executed without a warrant.  The search warrant that the agents secured described alleged illegal activity at 6426 Hasbrook Avenue, and sought to search those premises, instead of 6425 Hasbrook Avenue, Willis' residence.  This claim is also meritless.

The incorrect house number found in the agent's application for a search warrant was an unfortunate but harmless typographical error.  A review of the affidavit shows that it was not knowingly or recklessly false.  It provided the issuing authority with ample support for a determination of probable cause for the search.  The affidavit was not so facially deficient that it failed to particularize the place to be searched or the items to be seized.  See United States v. Leon, 468 U.S. 897, 923 (1984).  In fact, the affidavit provided a specific description of the residence to be searched: a red brick, 2-story twin house with a driveway on the side, a boat in the backyard, a black security door on the side, and a detached garage in the rear.  Further, the agent who prepared the affidavit had become familiar with the residence during this investigation.  Thus, I find that the search warrant satisfied the requirements of the Fourth Amendment, despite a typographical error in the street address.[2]  I will deny the motion to suppress in its entirety.

An appropriate Order follows.

---

[2] It is also important to note that if the officers executing the warrant had a good faith belief in the validity of the warrant, the fruit of the search would not be excluded. United States v. Leon, 468 U.S. 897, 922 (1984); see also United States v. Hodge, 246 F.3d 301, 305 (3d Cir. 2001) (the suppression of evidence is inappropriate when an officer executes a search in objectively reasonable reliance on a warrant's authority).

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL ACTION** |
| | : | |
| **v.** | : | **NO. 07-205-02** |
| | : | |
| **HOWARD WILLIS** | : | |

## O R D E R

     **AND NOW,** this   20th   day of November, 2007, upon consideration of the defendant's motion to suppress physical evidence (Document #39), the government's response thereto (Document #42), and after a hearing on the motion, it is hereby ORDERED that the motion is DENIED in its entirety.

BY THE COURT:

 /s/ Lawrence F. Stengel
LAWRENCE F. STENGEL, J.